JOSEPH ALBANESE
Attorney At Law
915 Lacey Road
Forked River, New Jersey 08731
(609) 971-6200
Attorney for Plaintiffs
ID # JA 4941

| | |
|---|---|
| **Ria Lynn Mucci; Michael Mucci; and Estate of Rae Fraraccio, deceased**<br><br>Plaintiffs,<br><br>vs.<br><br>**Wilmington Savings Fund Society, as Trustee for Finance of America Structured Securities Acquisition Trust 2019-HB-1; Finance of America Structured Securities Acquisition Trust 2019-HB-1; Compu-Link Corporation d/b/a Celink; Finance of America Reverse LLC; and Greenspoon Marder LLP,**<br><br>**Defendants** | UNITED STATES DISTRICT COURT<br><br>DISTRICT OF NEW JERSEY<br><br>(TRENTON VICINAGE)<br><br>Docket No.<br><br>Civil Action |

**COMPLAINT BASED ON VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT**

**and**

**DEMAND FOR JURY TRIAL**

1

Plaintiffs, Ria Lynn Mucci, Michael Mucci, and Estate of Rae Fraraccio, deceased, through their attorney by way of Complaint against the Defendants, state as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages, emotional and mental distress damages, statutory damages, attorney fees and costs, and other relief brought by Ria Lynn Mucci and Michael Mucci, individuals, and the Estate of Rae Fraraccio, deceased, against all the above named defendants, for violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 et. seq. (hereafter F.D.C.P.A.).

## JURISDICTION: VENUE

2. Jurisdiction in this matter exists because Plaintiffs claims arise as a federal question pursuant to 15 U.S.C. §1692 et. seq. (The Fair Debt Collection Practices Act, or hereafter "FDCPA").

3. Jurisdiction specifically arises under 15 U.S.C. §1692(k)(d), 28 U.S.C. §1331 and 25 U.S.C. §1337.

4. In addition, to the extent this Court gives declaratory relief, jurisdiction is available under 28 U.S.C. §2201 & §2202.

5. Venue in this matter is properly before this Court, in that Plaintiffs Michael Mucci and Ria Lynn Mucci reside Ocean County and Gloucester Counties, New Jersey, respectively; the late Rae Fraraccio (Mrs. Fraraccio) resided in Ocean County and Monmouth counties, respectively, during the last year or so of her life; and in addition, the real property involved in the underlying dispute between the parties is located at 109 Mantoloking Road, Brick, Ocean County, New Jersey (the "property" or the "subject property"; and also because the probate court with jurisdiction over the Estate of Rae Fraraccio is in Toms River, Ocean County, New Jersey.

## THE PARTIES

6. The late Rae Fraraccio ("Mrs. Fraraccio") was the title owner of the subject property. Rae Fraraccio was a natural person and a consumer for purposes of the FDCPA.

7. The Estate of Rae Fraraccio (the Estate) is the legal successor to Rae Fraraccio. Although the Estate is not a natural person, it is nonetheless a "person" for purposes of the FDCPA, and can sue for damages if injured by a violation of the FDCPA.

8. Ria Lynn Mucci (hereafter Ria or Ria Mucci) is an individual. Under the last will and testament of Rae Fraraccio, Ria (the daughter of Mrs. Fraraccio) is the sole beneficiary of real property located at 109 Mantoloking Road, Brick,

Ocean County, New Jersey (the "property" or the "subject property"). Ria Mucci is a "person" for purposes of the FDCPA, and is entitled to recover damages caused by violation of the statute.

9. Michael Mucci ("Michael" or "Michael Mucci") is an individual. He is the grandson of Mrs. Fraraccio. Michael has been residing in the subject property since about March 2018. Also, from approximately March 2018 to October 2018, Michael lived in the subject property with Mrs. Fraraccio to assist in her care. Michael Mucci is a "person" for purposes of the FDCPA, and is entitled to recover damages caused by violation of the statute.

10. It was the expressed desire of Mrs. Fraraccio that upon her death, the property would pass to Ria and further, that the property would remain in the family permanently. Members of Mrs. Fraraccio's family all have a deep emotional connection to the property, which has been in the family for roughly 40 years.

11. The said Rae Fraraccio died testate on December 8, 2019. Prior to her death, Fraraccio had a reverse mortgage on the subject property (the "reverse mortgage").

12. The underlying reverse mortgage debt is a consumer debt, in that it was used by Mrs. Fraraccio for personal, household, or family purposes and not commercial purposes.

13. The reverse mortgage is currently held by defendant Wilmington Savings Fund Society, FSB, as Trustee for Finance of America Structured Securities

Acquisition Trust 2019-HB-1 ("Wilmington"). Wilmington, as Trustee, is a business entity, and uses the instrumentalities of interstate commerce or the mails in connection with the collection of debts. Wilmington does business in the state of New Jersey that includes, *inter alia,* commencing foreclosure cases to collect money owed or allegedly owed to Finance of America Structured Securities Acquisition Trust 2019-HB-1 (the "Trust").

14. Wilmington is a debt collector for purposes of the Fair Debt Collections Practices Act (hereafter "FDCPA"), in that its principle purpose is the collection of debts, or in the alternative it regularly collects debts or attempts to collect debts owed or alleged to be owed to another, or in the alternative its principle purpose pursuant to 15 U.S.C. 1692(f)(6) is the enforcement of security interests.

15. Finance of America Structured Securities Acquisition Trust 2019-HB-1 (the "Trust") is a separate trust entity that was formed for the purpose of purchasing defaulted debts, including defaulted reverse mortgages. All or most of the instruments in the pool of mortgages owned by the Trust are in default, and commencing foreclosure cases is one means by which the Trust collects defaulted debts.

16. The Trust is a debt collector for purposes of the Fair Debt Collections Practices Act (hereafter "FDCPA"), in that its principle purpose is the collection of debts, or in the alternative it regularly collects debts or attempts

to collect debts owed or alleged to be owed to another, or in the alternative its principle purpose pursuant to 15 U.S.C. 1692(f)(6) is the enforcement of security interests.

17. Compu-Link Corporation d/b/a Celink ("Celink") is a corporate business entity that serves as the master servicer, servicer, or sub-servicer of Mrs. Fraraccio's reverse mortgage on the subject property. Upon information and belief, Celink acquired servicing rights for the reverse mortgage subsequent to the time Mrs. Fraraccio's mortgage went into default.

18. Celink is a debt collector for purposes of the Fair Debt Collections Practices Act (hereafter "FDCPA"), in that its principle purpose is the collection of debts, or in the alternative it regularly collects debts or attempts to collect debts owed or alleged to be owed to another, or in the alternative its principle purpose pursuant to 15 U.S.C. 1692(f)(6) is the enforcement of security interests.

19. Finance of America Reverse LLC ("Finance of America") is a business entity that serves as the master servicer, servicer, or sub-servicer of Mrs. Fraraccio's reverse mortgage on the subject property described above. Upon information and belief, Celink acquired servicing rights to the subject mortgage subsequent to the time Mrs. Fraraccio's mortgage went into default.

20. Finance of America is a debt collector for purposes of the Fair Debt Collections Practices Act (hereafter "FDCPA"), in that its principle purpose

is the collection of debts, or in the alternative it regularly collects debts or attempts to collect debts owed or alleged to be owed to another, or in the alternative its principle purpose pursuant to 15 U.S.C. 1692(f)(6) is the enforcement of security interests.

21. Greenspoon Marder LLP ("Greenspoon Marder") is a law firm that provides legal services in the state of New Jersey and other states. Its legal services included, *inter alia* commencing foreclosure cases in New Jersey, which is a "judicial foreclosure" state. Greenspoon Marder began attempts to collect the reverse mortgage debt subsequent to the time the mortgage went into default.

22. Greenspoon Marder is a debt collector for purposes of the Fair Debt Collections Practices Act (hereafter "FDCPA"), in that it regularly collects debts or attempts to collect debts owed or alleged to be owed to another.

## GENERAL BACKGROUND

23. This case arises out of a foreclosure action commenced by Wilmington, on behalf of the Trust, in the state of New Jersey, captioned <u>Wilmington Savings Fund Society, FSB (as Trustee) vs. Rae Fraraccio, et. al</u>, Superior Court of New Jersey, Chancery Division, Ocean County, New Jersey, Case # F-001927-22, filed on March 7, 2022 ("the foreclosure case"). Defendant Greenspoon Marder represents Wilmington in the foreclosure case.

24. The foreclosure being prosecuted by defendants is wrongful and unjustified, and never should have been commenced in the first place, for reasons summarized in this complaint, and the details of which will be further developed though discovery in this case.

25. All defendants named herein, in various ways, participated in, facilitated, promoted, commenced, encouraged, or otherwise caused the filing of the foreclosure case.

26. The foreclosure case is an attempt to collect a consumer debt by, and with the participation of, all the defendants named above, all of whom are debt collectors for purposes of the FDCPA.

27. The foreclosure has caused serious emotional harm and distress to Michael and Ria, including anxiety, depression, fear of losing the family home, and other kinds of emotional distress.

28. Because of the wrongful foreclosure commenced, promoted and facilitated by all these defendants, plaintiffs, individually and collective, have already spent and will spend in the future thousands of dollars defending the foreclosure case and preventing eviction from the subject property. The costs already incurred and to be incurred include, without limitation, fees for professionals and consultants, attorneys, experts fees, filing fees, discovery and deposition fees, and other fees normally and typically incurred in litigation.

29. Pursuant to applicable federal law and regulations, upon the death of Rae Fraraccio, her family members became entitled to satisfy the outstanding mortgage balance by either paying the full mortgage balance or by paying 95% of fair market value – whichever is less.

30. Soon after the death of Mrs. Fraraccio on December 8, 2019, Ria Mucci advised Celink and Finance of America that Mrs. Fraraccio had died and her family wanted to purchase the property at 95% of fair market value. Celink and/or Finance of America ordered an appraisal, which was done by a Mr. Albert Miller of East Coast Appraisal Associates in or about March, 2020.

31. At all times relevant, plaintiff have made it clear to Celink, Finance of America, and Greenspoon Marder that the family of Rae Fraraccio intends to satisfy the reverse mortgage by paying 95% of fair market value, and that they have the means to do so. However, the valuation used by Celink and Finance of America must be accurate, and based upon a fair and honest appraisal.

32. Albert Miller, defendant's own appraiser, found evidence of significant structural damage to the foundation when doing his appraisal. He noted in his appraisal report Plaintiffs, *inter alia*, that following Hurricane Sandy "it appears that the foundation was not raised properly due to foundation cracks in the rear concrete wall", that the "property does not meet HUD minimum property standards for existing dwellings", and that there were apparent

"adverse physical and structural conditions". Mr. Miller recommended that a structural engineer inspect the property.

33. Mr. Miller also noted other problems with the property, including (without limitation) the furnace not being property installed and the roof being near the end of its useful life.

34. Not only did Mr. Miller point out serious structural problems and needed repairs in his appraisal report, but he actually spoke with Ria Mucci in person (in the present of Michael Mucci) and told her about the problems with the property. He also recommended that she get an engineering report and estimate of the cost to repair the damage.

35. Not only did Mr. Miller speak with Ria in person, but he sent her two follow up emails, in which he reiterated that she should get an engineering report. Commenting on the foundation problem, Mr. Miller stated in his email, *inter alia*, "I have been an appraiser for 18 years and I have never seen a foundation like that . . . . if the original contractor won't fix that then that is up to you on how you would like to proceed".

36. Acting on Mr. Miller's recommendation, Ria Mucci obtained an estimate of cost to repair the foundation from Hale Built House-Raising a few months later. The estimated cost of repairing the foundation was close to $80,000. Based on current prices, on information and belief, the cost to do necessary

repairs at this point in time, including the roof and miscellaneous repairs is $100,000 or more.

37. Because he is not an engineer, Mr. Miller could not, and did not, adjust the market value shown in his appraisal based on the cost of repair.

38. However, a fair and honest appraisal must factor in the cost or repairs, especially structural problem with the foundation. It would necessarily cause a significant reduction in the appraised market value.

39. Defendants Celink and American Finance were well aware of the structural problems involving the subject property's foundation (and other repair issues). Not only are these issues identified <u>in their own appraiser's report</u> (Mr. Miller's), but plaintiffs on multiple occasions have brought the issue to the attention of Celink and American Finance in writing.

40. In addition, plaintiffs provided a copy of the engineering report to Celink and American Finance, along with other documentation such as the emails from Mr. Miller to Ria Mucci, to inform these defendants that there are problems with the property that affect its value, and the cost of fixing these problems is very high.

41. As a result of numerous communications from plaintiffs to Celink and American Finance about the repair issues, all defendants have either actual or constructive notice that any fair and honest appraisal of the property must include an engineering report with estimated repair costs, and that the

estimated market value must be reduced to reflect the significant cost of necessary repairs.

42. Despite this, defendants have refused to produce a fair and honest appraisal that accurately estimates the market value of the property and that accurately reflects structural damage and cost of repair.

43. For example, since the time of Mr. Miller's report, defendants have obtained several subsequent appraisals that simply whitewash and overlook the problems identified by Mr. Miller.

44. On more than one occasion, plaintiffs have complained about and/or appealed the results of these subsequent appraisals that were obtained by Celink and/or Finance of America, because these subsequent appraisals simply ignore the repair issues raised by Mr. Miller and plaintiffs.

45. Rather than obtaining an engineering report to determine to cost of repairs, Celink and Finance of America simply "rubber-stamped" these subsequent appraisals, while ignoring the foundation problem and the other repair issues identified by Mr. Miller (their *own appraiser*).

46. In short, the entire appraisal process utilized by Celink and Finance of America since the death of Mrs. Fraraccio is fundamentally unfair, misleading, and dishonest.

47. As a result of the foregoing, the defendants herein have demanded, and are attempting to collect by way of the foreclosure, far more money than is legally

required to satisfy the outstanding reverse mortgage debt (95% of true market value).

48. As a direct result of defendants' collection activities, including the foreclosure case against the subject property, the plaintiffs have suffered damages.

49. Plaintiffs' damages include, as to Ria Mucci and Michael Mucci, emotional distress as described above.

50. In addition, plaintiffs have suffered and will suffer financial harm, by having to defend the foreclosure case, and in addition, by incurring significant costs of litigation as described above to prosecute the within action in federal district court.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

51. Plaintiff repeats and realleges each of the above allegations as if set forth herein verbatim.

52. The actions of Defendants, each of them and all of them, violate the Fair Debt Collection Practices Act in one or more ways, including (without limitation):

   A. Using unfair or unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692(f), including (without limitation), demanding and attempting to collect tens of thousands of dollars more to satisfy the reverse mortgage debt than the amount plaintiffs are legally required to pay

(based on 95% of fair market value) by means of the foreclosure case and other means of demanding payment; ignoring the recommendations of their own appraiser (Mr. Miller) to obtain an engineering report and factor in the cost of repairs to determine true fair market value; conducting an appraisal process that is inherently dishonest and unfair; ignoring information presented by plaintiffs relevant to determining the true value of the property and cost of repairs, while "rubber-stamping" appraisal reports subsequent to Mr. Miller's that whitewash and/or simply ignore the repair issues; impeding the ability of Ria Mucci to purchase the property at 95% of fair market value by demanding a far higher price than the property is worth based on a fair and honest appraisal.

**B.**     Using false, deceptive, or misleading representations or means in an attempt to collect a debt in violation of 15 U.S.C. § 1692(e) and 15 U.S.C. § 1692(e)(10), including (without limitation), issuing written communications that claim the amount due on the reverse mortgage debt is the full nominal ledger amount, without acknowledging that the legal amount required to satisfy the mortgage is a lesser amount based on 95% of true market value; by commencing a wrongful foreclosure that never should have been filed, given that defendants have known from the beginning that Rae Fraraccio's family has the intent and means to purchase the property once the true fair market value is established.

**53.** As a direct, proximate and legal result of Defendant's violation of the Fair Debt Collection Practices Act, Plaintiffs have suffered damages. These damages include (as to all plaintiffs), without limitation, having to incur past and future legal fees to defend against the foreclosure case and prevent dispossession from the subject property; severe mental distress damages (as to Ria Mucci and Michael Mucci) based on fear of losing the family home of their mother and grandmother, respectively; and other damages.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants for: (a) actual damages, including without limitation damages for emotional distress, (b) statutory damages, (c) reasonable legal fees and costs, and (d) such other relief as the Court deems just and equitable.

Dated: March 6, 2023
/s/ **Joseph Albanese**
**JOSEPH ALBANESE, ESQ.**
**Attorney for Plaintiffs,**
**Ria Lynn Mucci,**
**Michael Mucci, and Estate of**
**Rae Fraraccio, deceased**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues so triable, with the maximum number of jurors permitted by law.

Dated: March 6, 2023

/s/ **Joseph Albanese**
**JOSEPH ALBANESE, ESQ.**
**Attorney for Plaintiffs,**
**Ria Lynn Mucci,**
**Michael Mucci, and Estate of**
**Rae Fraraccio, deceased**